FILED

2009 Jul-23  AM 11:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **LEGACY ACADEMY, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CV-09-S-1017-NE** |
| | ) | |
| **RPNC, INC., ROBERT W.** | ) | |
| **CARMICAL, and PAMELA A.** | ) | |
| **CARMICAL,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Legacy Academy, Inc., filed this case against defendants RPNC, Inc., an alleged franchisee of Legacy Academy, and Robert and Pamela Carmical, the owners of RPNC.  Plaintiff asserts claims for breach of a Franchise Agreement entered into by Legacy Academy and RPNC, breach of Guaranty Agreements between Legacy Academy and the Carmicals, trademark infringement, trade dress infringement, and violation of the Alabama Uniform Trade Secrets Act, Ala. Code § 8-27-1 *et seq.*  All of these claims arise out of the Carmicals' operation of a day care facility called Cambridge Academy in Madison, Alabama ("the Cambridge facility" or "the Madison facility").  Plaintiff alleges, generally, that defendants are operating the Cambridge Academy facility in violation of their Franchise and Guaranty Agreements with Legacy Academy, and that defendants are unlawfully using Legacy

Academy's trademarks and trade dress.[1]  The case currently is before the court on plaintiff's motion for preliminary injunctive relief,[2] and defendants' motion to stay this litigation pending arbitration.[3]

The court held an evidentiary hearing on these motions on July 14, 2009, in Huntsville, Alabama.  The court also conducted site visits to the Madison facility, as well as to a Legacy Academy facility in Franklin, Tennessee.[4]  The hearing was necessarily abbreviated, and the number of witnesses necessarily limited, due to the early stage of the litigation and the resulting lack of available evidence.  Thus, this opinion should be viewed as addressing the evidence presented at the hearing, insofar is it relates to plaintiff's request for preliminary injunctive relief.  The opinion should not be construed as commenting on the ultimate merits of any of plaintiff's claims.

## I.  PRELIMINARY INJUNCTION

The parties agree that this court should decide plaintiff's motion for preliminary injunctive relief before staying the case pending arbitration.[5]  Plaintiff seeks a preliminary injunction to either:  (a) allow it to take over the operation of the

---

[1]See doc. no. 1 (Complaint).

[2]Doc. no. 9.

[3]Doc. no. 12.

[4]The site visit to the Madison facility occurred on July 14, 2009, the date of the hearing.  The site visit to the Franklin, Tennessee facility occurred the following day, July 15, 2009.

[5]See Transcript of July 14, 2009 preliminary injunction hearing.

Madison facility in order to cure defendants' alleged violations of the Franchise Agreement,[6] or (b) require defendants to operate the Madison facility as a Legacy Academy in full compliance with the Franchise Agreement.[7]

To prevail on its motion for preliminary injunctive relief, plaintiff must demonstrate *each* of the following elements: (1) a likelihood of success on the merits of its underlying claims; (2) irreparable harm in the absence of an injunction; (3) that the absence of an injunction would cause it greater harm that the issuance of an injunction would cause defendants; and (4) that an injunction would not disserve the

---

[6]The franchise agreement provides for this remedy. *See* doc. no. 1 (Complaint), Exhibit 1 (Franchise Agreement), at § 13.2 ("In addition to Franchisor's right to terminate or suspend this Agreement as set forth in Section 13.1, if Franchisee does not correct a default (which may be corrected by Franchisee), within the applicable cure period after receipt by Franchisee of written notice, a designated representative of Franchisor may, at Franchisor's option, and without any obligation whatsoever, cure such default or cause such default to be cured, or enter upon, control, and operate Franchisee's Legacy Academy For Children Development Center until the default has been cured . . . .").

[7]The Franchise Agreement also allows for injunctive relief in the event of a breach:

Franchisor it its designee shall be entitled to obtain, without bond, declarations, temporary and permanent injunctions, and orders of specific performance, in order to enforce the provisions of this Agreement relating to Franchisee's use of the Marks, the obligations of Franchisee upon termination or expiration of this Agreement, or with respect to any transfer contemplated under Section 12, or to prohibit any act or omission by Franchisee, its Guarantors or its employees that constitutes a violation of any applicable law or regulation, is dishonest or misleading to prospective or current customers of any business operated under Legacy Academy System, constitutes a danger to other franchisees, employees, customers or the public, or may impair the goodwill associated with the marks or the Legacy Academy System.

Franchise Agreement, at § 19.2.

public interest. *North American Medical Corp. v. Axiom Worldwide, Inc.,* 522 F.3d 1211, 1217 (11th Cir. 2008) (citation omitted). The court will consider each of these elements separately with regard to each of plaintiff's claims.[8]

## A. Trademark Infringement

Plaintiff claims that defendants have infringed upon the following protected trademarks: (1) "Legacy Academy for Children®" (USPTO Registration Nos. 2277846 and 2686283); (2) "Framework for Their Future®" (USPTO Registration No. 3055333, Serial Number 76570443); (3) "The Perfect Beginning For Your Legacy®" (USPTO Registration No. 32777705); and (4) a Dancing Apple Design (USPTO Registration No. 76400880).[9]

> To prevail on a claim of trademark infringement . . ., plaintiff[] must establish: (1) that [it] possess[es] a valid mark, (2) that the defendants used the mark, (3) that the defendants' use of the mark occurred "in commerce," (4) that the defendants used the mark "in connection with the sale . . . or advertising of any goods," and (5) that the defendants used the mark in a manner likely to confuse consumers. *See 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406-07 (2d Cir.2005); *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir.2001).

*North American Medical Corp.,* 522 F.3d at 1218.

Here, there is no dispute that plaintiff holds valid, registered trademarks. Even

---

[8]Plaintiff does not make any argument that it is entitled to an injunction on its claims for violations of the Alabama Trade Secrets Act; consequently, the court will only consider plaintiff's four other claims.

[9]*See* Complaint, at ¶ 82.

so, plaintiff did not present any evidence at the preliminary injunction hearing that defendants are *currently* using any of plaintiff's marks in commerce or in connection with the sale or advertising of any goods or services, or that any alleged use of the trademarks is likely to cause customer confusion.[10]  Consequently, plaintiff did not demonstrate a substantial likelihood of succeeding on the merits of its claim for trademark infringement, and plaintiff is not entitled to injunctive relief on that claim.[11]

## B.    Trade Dress Infringement

Plaintiff alleges that it is the "owner of the Legacy Trade Dress," which

---

[10]There was some evidence presented at the hearing to indicate that the parties *may* have been confused about the state of their relationship on the date this lawsuit was filed. Mr. Carmical testified that, on May 20, 2009, Legacy Academy provided notice of defendants' alleged default under the Franchise Agreement, and gave him the opportunity to cure the default within ten days, or by May 30, 2009.  Despite that fact, however, plaintiff filed this lawsuit on May 22, 2009, eight days before the cure period was over, and the photographs plaintiff presented as evidence of defendants' alleged trademark and trade dress infringement also were taken on May 22.  Specifically, the May 22 photographs depict defendants' use of the phrase "Legacy Academy," along with an apple logo, on the bulletin board located in the Madison facility.  *See* plaintiff's Exhibit 17 from the July 14, 2009 Preliminary Injunction Hearing.  Even so, Mr. Carmical testified that he removed all items bearing any of plaintiff's registered trademarks from the facility after the suit was filed. Plaintiff did not present any evidence to contradict Mr. Carmical's testimony, and, indeed, the court did not observe any infringing use of plaintiff's registered trademarks during the site visit to the Madison facility on July 14, 2009.

[11]Because plaintiff was not able, at the time of the preliminary injunction hearing, to demonstrate a likelihood of succeeding on the merits of its trademark infringement claim, the court need not consider whether plaintiff would suffer irreparable harm in the absence of injunctive relief, whether the harm plaintiff would suffer if an injunction does not issue would outweigh the harm defendant would suffer if an injunction does issue, or whether the issuance of an injunction would serve the public interest.

allegedly includes the requirement that "Legacy Academy for Children® Development Centers be constructed in accordance with copyrighted plans and specifications resulting in a distinctive exterior and interior building design, decor, exclusively-designed signage, decorations, equipment, furnishings, and materials. The Legacy System also employs distinctive color combinations and other physical embodiments."[12]  Plaintiff claims that defendants have infringed upon the Legacy Trade Dress by using it in an unauthorized manner that is inconsistent with the terms of the Franchise Agreement, misleading, and likely to cause confusion among the consuming public.[13]  Plaintiff accordingly seeks an injunction to prevent defendants from "using or displaying Legacy Academy's trade dress, including the Legacy Academy exterior building design, apple-shaped design features, interior tile configuration, interior and exterior color scheme, and classroom configuration, except in connection with the operation of the Franchise Premises as a Legacy Academy for Children."[14]

The Eleventh Circuit has described the term "trade dress" as "'the appearance of a product when that appearance is used to identify the producer.'"  *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC,* 369 F.3d 1197, 1202 (11th Cir. 2004) (quoting

---

[12]Complaint, at ¶ 5.

[13]*Id.* at ¶¶ 102-03.

[14]Doc. no. 9, at p. 3, ¶ 6.

*Publications International, Ltd. v. Landoll, Inc.,* 164 F.3d 337, 338 (7th Cir. 1998)).

> "'Trade [d]ress' involves the total image of a product and may include features such as size, shape, color . . ., texture, graphics, or even particular sales techniques." *AmBrit,* [*Inc. v. Kraft, Inc.,*] 812 F.2d [1531,] 1535 [(11th Cir. 1986)] (internal quotation omitted). In order to prevail on [a] claim for trade dress infringement under § 43(a), [the plaintiff] must prove that (1) the product design of the two products is confusingly similar; (2) the features of the product design are primarily non-functional; and (3) the product design is inherently distinctive or has acquired secondary meaning. *Epic Metals Corp. v. Souliere*, 99 F.3d 1034, 1038 (11th Cir.1996); see also 15 U.S.C. § 1125(a)(3) ("[T]he person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional."); *TrafFix Devices, Inc. v. Mktg. Displays, Inc*., 532 U.S. 23, 29, 121 S.Ct. 1255, 1259, 149 L.Ed.2d 164 (2001) (stating that "trade dress protection may not be claimed for product features that are functional"). "[A]s all three elements are necessary for a finding of trade dress infringement, any one could be characterized as threshold." *Epic Metals*, 99 F.3d at 1039.

*Dippin' Dots,* 369 F.3d at 1202.

Here, plaintiff has not crossed the "threshold" of demonstrating that anything about the interior or exterior design or configuration at Cambridge Academy is so similar to the Legacy Trade Dress as to cause confusion with any member of the consuming public. There was no evidence presented at the preliminary injunction hearing that defendants' alleged trade dress violations have caused confusion with any potential or actual consumer. In fact, both of plaintiff's witnesses testified that, while they expect that customer confusion will result, they do not know of, and can produce no evidence of, any *actual* confusion. The suppositions of plaintiff's

7

witnesses are insufficient to demonstrate that plaintiff is likely to show customer confusion when this case is heard on the merits.[15]

Further, plaintiff did not offer any evidence — or even any argument — that the allegedly trade-dress-protected elements of the Legacy Academy design are non-functional.

Finally, plaintiff did not demonstrate at the hearing that any of its alleged trade dress is inherently distinctive or has acquired secondary meaning.[16]   Plaintiff first complains of defendants' use of the title "Cambridge Academy."   The court can discern nothing about the use of the word "Cambridge" that might be distinctive (or, for that matter, anything that might cause confusion with the word "Legacy"). Accordingly, it follows that plaintiff must be referring to defendants' use of the word "Academy."   That word, when used to describe a child care or educational facility, is merely descriptive and is far too common to warrant trade dress protection.  *See Vision Center v. Opticks, Inc.,* 596 F.2d 111, 115 (5th Cir. 1979)[17] ("Whenever a

---

[15]This is not to say that no customer confusion has resulted, simply that no evidence of confusion was presented at the preliminary injunction hearing.  Plaintiff may very well be able to produce such evidence, when the case is heard on the merits, in the form of statistical studies or testimony from actual or potential customers.

[16]The court is evaluating the potential infringement of the Legacy Trade Dress as of the date of the preliminary injunction hearing, based upon both the evidence presented at the hearing and the personal observations made during the court's site visit to the Madison facility.

[17]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

word or phrase naturally directs attention to the qualities, characteristics, effect, or purpose of the product or service, it is descriptive and cannot be claimed as an exclusive trade name.").

Plaintiff also complains that "[t]he Carmicals made no changes to the distinctive, exterior entranceway common to all Legacy Academy facilities."[18]  But plaintiff did not demonstrate at the hearing that the exterior facade of the Madison facility actually is distinctive from other companies' facilities, or even that all Legacy Academy facilities have the same exterior design.[19]  The contentions of plaintiff's witnesses that the exterior facade of the facility is unique are insufficient to support the entry of preliminary injunctive relief.

Next, plaintiff argues that the "prominent Legacy Academy apple, a distinctive component of Legacy Academy's Trade Dress, remained in the water park."[20]  To support this allegation, plaintiff submitted photographs of some synthetic palmetto-like structures and of a tubular metal structure that it identifies as the Legacy

---

[18]Doc. no. 10, at 25.

[19]Melissa Turner, one of the owners of Legacy Academy, testified that, in the past, another former franchisee had painted the exterior of its building in an effort to "de-flag" from Legacy Academy, and that those efforts satisfied Legacy Academy.  That testimony leads the court to believe that the parties could negotiate a mutually agreeable solution to the problem of the allegedly infringing facade.

[20]Doc. no. 10, at 25.

Academy apple with the stem removed to resemble a "heart" shape.[21]  The infringing nature of this structure is not self-apparent, however.  Plaintiff did not present any evidence about why the metal heart on Legacy Academy water park grounds should be considered distinctive, how the design may have gained secondary meaning, or how the metal structure that presently is outside the Madison facility could be considered confusingly similar to the Legacy Academy heart design.[22]

Last, plaintiff argues that defendants continue to use Legacy Academy's distinctive color scheme and tile design.  It is true, based upon the evidence presented at the preliminary injunction hearing and the court's own observations, that the configuration of the floor tiles in the Madison facility is the same now as when the facility was being operated as a Legacy Academy.[23]  Even so, there is no evidence, other than plaintiff's conclusory allegation that the tile pattern is copyrighted, that the

---

[21]The court also observed this structure during its July 14, 2009 visit to the Madison facility.

[22]Plaintiff also argued in its brief that "the literature being used to convey the facilities' philosophy continued to use identical wording to the Legacy Academy copyrighted materials."  Doc. no. 10, at 26.  However, Mr. Carmical testified that Cambridge Academy removed all literature with confusingly similar wording to Legacy Academy literature after the filing of this lawsuit.  Plaintiff produced no evidence that defendants continued to use any infringing literature on the date of the hearing, and the court did not observe any such infringing literature during its visit to the Madison facility.

[23]The court did observe the same (or at least a substantially similar) tile pattern at the Franklin, Tennessee facility.  Notably absent from the Franklin facility, however, was the much-discussed outdoor water park.

10

tile pattern and color scheme are distinctive or have acquired secondary meaning.[24]

In summary, plaintiff has not demonstrated that is likely to be able to prove that defendants are using interior or exterior features that are confusingly similar to the Legacy Academy Trade Dress, or that the alleged trade dress is non-functional, inherently distinctive, or has acquired secondary meaning. Accordingly, based upon the record presented at the preliminary injunction hearing and the court's personal observations, plaintiff has not demonstrated a likelihood of succeeding on the merits of its trade dress infringement claim. It consequently is not entitled to injunctive relief on that claim.[25]

## C.    Breach of Contract

---

[24]Plaintiff might fare better once the case is considered on the merits if it detailed the copyright protection to which its color scheme and tile configuration are entitled, or if it produced evidence that the tile pattern actually is consistent throughout all Legacy Academy facilities.

[25]Because plaintiff was not able, at the time of the preliminary injunction hearing, to demonstrate a likelihood of succeeding on the merits of its trade dress infringement claim, the court need not consider whether plaintiff would suffer irreparable harm in the absence of injunctive relief, whether the harm plaintiff would suffer if an injunction does not issue would outweigh the harm defendant would suffer if an injunction does issue, or whether the issuance of an injunction would serve the public interest.

The court notes, however, that the equities tend to favor defendants, especially to the extent that plaintiff seeks to prevent defendants from *ever* operating the Madison facility as anything other than a Legacy Academy. Based upon the evidence presented at the July 14 hearing, it appears that defendants own both the building that houses the Madison facility, and the land upon which it sits. To forever restrict defendants' use of their property to a single purpose would place a far greater burden on defendants than the burden plaintiff would bear if defendants were allowed to operate the facility as something other than a Legacy Academy. This is especially true considering that defendants did not build the facility themselves, but instead purchased the land and building *after* Legacy Academy approached them about entering into a Franchise Agreement.

Plaintiff alleges that defendants violated the Franchise Agreement by:

a.    failing to remit to Legacy Academy the Royalty Fee and Marketing Fee that were due by April 10, 2009;

b.    renouncing their intention to remit any further Royalty Fees or Marketing Fees to Legacy Academy;

c.    using or attempting to use the Legacy Marks in an unauthorized manner;

d.    using or attempting to use the Legacy Trade Dress in an unauthorized manner;

e.    depriving Legacy Academy of the benefits of the Legacy Trade Dress and the Legacy Marks;

f.    on information and belief, by utilizing the Premises to operate or attempt to operate a business other than the Legacy Academy for Children®;

g.    by competing against Legacy Academy within the Designated Territory; and

h.    by refusing to allow Legacy Academy to take possession of the Premises.[26]

Plaintiff also alleges that the Carmicals breached the Guaranty Agreements by "failing to cure Defendants' breaches and defaults under the Franchise Agreement or otherwise to satisfy any of Defendants' outstanding financial obligations to Legacy Academy pursuant to the Guaranty Agreements . . . ."[27]

---

[26]Complaint, at ¶ 71.

[27]*Id.* at ¶ 78.

12

1.      **Restrictive Covenants**

Plaintiff alleges that defendants violated the restrictive covenants in the Franchise Agreement by operating a competing business within the territory prohibited by the Agreement. Defendants respond that the covenants are unenforceable and therefore could not have been violated.

The pertinent provisions of the Franchise Agreement read as follows:

11.1  <u>In-Term Covenants</u>. During the Term of this Agreement, as it may be renewed, Franchisee and each Guarantor covenants:

(i)      To use their best efforts in operating the Legacy Academy For Children Development Center and the Premises, and in recommending, promoting and encouraging patronage of all Legacy Academy for Children Development Centers;

(ii)     Not to engage, directly or indirectly, as an owner, in any managerial capacity or as a consultant (whether as an employee or independent contractor) in any child development, day care, or preschool business, whether or not owned by Franchisee, located anywhere in the Designated Territory or within a three (3) mile radius of the Premises, other than as a franchise owner or employee of a franchisee under the Legacy Academy System, without Franchisor's prior written consent. Franchisee (or such other person) shall not be prohibited from owning equity securities of any business whose shares are traded on a stock exchange or on the over-the-counter market so long as the Franchisee's (or such other person's) record and beneficial ownership interest shall represent two percent (2%) or less of the total number of outstanding shares of such business and Franchisee (or such other person) is not an officer, director, employee, agent or consultant with respect to such business.

11.2  <u>Post-Term Covenants</u>.  In the event this Agreement is

13

terminated for any reason or expires, Franchisee, and each Guarantor, covenant, for a period of two (2) years after such termination or expiration:

(i)     Not to engage directly or indirectly, as an owner, in any managerial capacity or as a consultant (whether as an employee or independent contractor) in any child development, day care, or preschool business in the Designated Territory, or within a radius of three (3) miles of the Premises, without Franchisor's prior written consent.  Franchisee (or such other person) shall not be prohibited hereby from owning equity securities of any business whose shares are traded on a stock exchange or on the over-the-counter market so long as Franchisee's (or such other person's) record and beneficial ownership interest shall represent two percent (2%) or less of the total number of outstanding shares of such business and Franchisee (or such other person) is not an officer, director, employee, agent or consultant with respect to such business; and

(ii)    Not to solicit or accept, or attempt to solicit or accept, directly or by assisting others, any business from any of the customers of Franchisee's Legacy Academy For Children Development Center or Franchisor, including actively sought prospective customers, within whom Franchisee (or any of its owners or employees) had material contact during the Term of this Agreement, for purposes of providing products or services that are competitive with those provided by a Legacy Academy For Children Development Center.[28]

An Exhibit to the Franchise Agreement entitled "Designated Territory" states:

Franchisee's Designated Territory, as defined in the Franchise Agreement, is initially designated and reflected on the map attached to this Exhibit B as Exhibit B-1.[29]  Once a location for the Franchisee's Legacy Academy for Children Development Center has been identified and construction therefore has commenced, the Designated Territory

---

[28]Franchise Agreement, at §§ 11.1 & 11.2.

[29]The materials submitted to the court did not actually contain an Exhibit B-1 or a map.

shall be modified to include and consist solely of the area established by a circle with the center point being the location of the Premises, having a radius of three (3) miles.  For all purposes of the covenants, restrictions and rights referring to the Designated Territory, the area within such circle shall be deemed the Designated Territory.[30]

The Franchise Agreement also states the following with regard to adjustments to be made to the Designated Territory:

Franchisee acknowledges that Franchisor's determination of Franchisee's Designated Territory will be based upon various factors including, without limitation, general location and neighborhood traffic patterns, estimated cost of property and local demographics. Franchisee further acknowledges that during the term of this Agreement the factors used by Franchisor to determine Franchisee's Designated Territory may change, including without limitation, altered traffic patterns and local demographics. *Therefore, Franchisee agrees that Franchisor may, from time to time, in its discretion, adjust Franchisee's Designated Territory in the event the factors used by Franchisor to determine Franchisee's Designated Territory have changed.*[31]

Defendants argue that both the In-Term Covenant and the Post-Term Covenant are invalid because they contain terms that are subject to change during the course of the Agreement.  Under Georgia law, which applies to the Franchise Agreement,[32]

[c]ourts will enforce a restrictive covenant in an employment contract only if: "(1) the restraint is reasonable; (2) founded upon valuable consideration; (3) is reasonably necessary to protect the party in whose favor it is imposed; and (4) does not unduly prejudice the

---

[30]Franchise Agreement, at Exhibit B.

[31]Franchise Agreement, at § 1.4 (emphasis supplied).

[32]*See* Franchise Agreement, at § 21.1 ("This Agreement is accepted by Franchisor in the State of Georgia and shall be governed by, construed, and enforced, in accordance with the laws thereof, which laws shall prevail in the event of any conflict.").

15

interests of the public." (Citation omitted.) *Hostetler v. Answerthink, Inc.,* 267 Ga.App. 325, 328(a), 599 S.E.2d 271 (2004). Moreover, "[s]uch restrictions must be strictly limited as to time, territorial effect, capacity in which the employee is prohibited from competing, and as to overall reasonableness." (Citation omitted.) *Id.* "Whether the restraint imposed by the employment contract is reasonable is a question of law for determination by the court, which considers the nature and extent of the trade or business, the situation of the parties, and all other circumstances." (Punctuation and footnote omitted.) *Habif, Arogeti & Wynne v. Baggett*, 231 Ga. App. at 292(2), 498 S.E.2d 346.

*Dent Wizard International Corp. v. Brown,* 612 S.E. 2d 873, 876 (Ga. Ct. App. 2005).

Georgia courts do not consider a restrictive covenant to be "reasonable" if it "is capable of changing and expanding during the life of the agreement." *Gandolfo's Deli Boys, LLC v. Holman,* 490 F. Supp. 2d 1353, 1358-59 (N.D. Ga. 2007) (applying Georgia law). Thus, "a restrictive covenant is invalid where 'the [restricted] territory cannot be determined until the contract terminates.'" *Id.* (citing *Advance Tech. Consultants, Inc. v. RoadTrac, LLC*, 551 S.E. 2d 735, 739 (Ga. App. Ct. 2001); *New Atlanta Ear, Nose & Throat Assocs., P.C. v. Pratt*, 560 S.E.2d 268, 272 (Ga. App. Ct. 2002); *Koger Props., Inc. v. Adams-Cates Co.*, 274 S.E.2d 329, 331 (Ga. 1981)). For example, in *Gandolfo's Deli Boys,* the restrictive covenant prevented the defendants from operating a competitive business at their present location, within ten miles of that location, or "within ten miles of any other [facility] in operation or under construction on the later of the effective date of the termination of the agreement or

16

the date on which a person restricted by the covenant complies with the section." *Gandolfo's Deli Boys*, 490 F. Supp. 2d at 1358.  Because the restrictive covenant "allow[ed] new restricted territories to be added during the life of the agreement," the court held the agreement invalid under Georgia law.  *Id.* at 1359.

In this case, both the in-term and post-term covenants restrict competition within the "Designated Territory."[33]  While the "Designated Territory" is defined in Exhibit B to the Franchise Agreement, the Agreement also grants Legacy Academy the right to adjust the Designated Territory, during the term of the Agreement, "from time, time, *in its discretion,*" if it determines that the factors influencing the designation of the territory have changed.[34]  Because the territory within which defendants are prohibited from competing with plaintiff is capable of changing and expanding during the life of the Franchise Agreement, the restrictive covenants are unenforceable under Georgia law, and defendants cannot be held liable for a breach of those covenants.[35]  Consequently, plaintiff has not demonstrated a substantial

---

[33]*See* Franchise Agreement, at §§ 11.1(ii), 11.2(i).

[34]*Id.* at § 1.4 (emphasis supplied).

[35]The same standard applies to both the in-term covenant and the post-term covenant. *See Atlanta Bread Co. Int'l, Inc. v. Lupton-Smith,* No. S08G1815, 2009 WL 1834215, at *3 (Ga. June 29, 2009) ("The appellate courts of this state have considered such restraints occurring during the active term of the parties' agreement and have made no distinction as to the level of scrutiny applied based on whether the restraint occurs during the term of the agreement or after the agreement has been terminated.") (citation omitted).  Here, both the in-term covenant and the post-term covenant rely upon a definition of the term "Designated Territory" that is subject to change during the course of the Agreement.  Consequently, both covenants are invalid.

17

likelihood of succeeding on the merits of its claim for breach of the restrictive covenants, and plaintiff is not entitled to injunctive relief on that claim.[36]

## 2.    Other Breach of Contract Claims

Plaintiff's remaining breach of contract allegations pertain to defendants' alleged unlawful use of plaintiff's trademarks and trade dress, and to defendants' general failure to perform under the Franchise and Guaranty Agreements (*i.e.,* by failing to pay Royalty and Marketing Fees, by not operating the Madison facility as a Legacy Academy, by refusing to allow plaintiff to take possession of the premises and operate the facility as a Legacy Academy, and by failing to cure defaults under the Franchise Agreement).  The court has already determined that plaintiff has not demonstrated a likelihood of succeeding on its claims that defendants unlawfully used its trademarks and trade dress.  Thus, insofar as plaintiff is asserting defendants' alleged trademark and trade dress infringement as violations of the Franchise Agreement, the court already has determined that plaintiff is not entitled to injunctive relief on those claims.

With regard to the remainder of plaintiff's breach of contract allegations,

_____

[36]Because plaintiff was unable, at the time of the preliminary injunction hearing, to demonstrate a likelihood of succeeding on the merits of its claim for breach of the restrictive covenants, the court need not consider whether plaintiff would suffer irreparable harm in the absence of injunctive relief, whether the harm plaintiff would suffer if an injunction does not issue would outweigh the harm defendants would suffer if an injunction does issue, or whether the issuance of an injunction would serve the public interest.

plaintiff has not demonstrated that it will be subject to irreparable harm if an injunction does not issue to remedy the violations alleged.  Plaintiff offered nothing but speculative testimony that irreparable harm might result as a result of the alleged breaches.  Speculation is insufficient to carry plaintiff's burden of proving entitlement to injunctive relief.  *See H2O To Go, LLC v. Martinez,* No. 05-21353-CIV-LENARD, 05-213530CIV-KLEIN, 2005 WL 2065220, at *5 (S.D. Fla. Aug. 22, 2005) (holding that "conclusory claims about the theoretical harm that may result from Defendant's continued operation of [a] franchise" were insufficient to establish irreparable harm). Thus, even if plaintiff had demonstrated a likelihood of succeeding on the merits of its non-restrictive-covenant-related breach of contract claims,[37] it could be made whole by the granting of monetary relief.  Plaintiff, therefore, is not entitled to injunctive relief on its breach of contract claims.[38]

## II. ARBITRATION

At the July 14, 2009 hearing, the parties agreed that, after the motion for

---

[37]This point was contested, and was the subject of much discussion, at the preliminary injunction hearing.  The court need not decide whether plaintiff is likely to succeed on the breach of contract claims, however, because, even assuming a likelihood of success on those claims, plaintiff did not demonstrate that it has no adequate remedy at law.

[38]Because plaintiff was unable, at the time of the preliminary injunction hearing, to demonstrate that it would suffer irreparable harm in the absence of an injunction, the court need not consider whether plaintiff is likely to succeed on the merits of its non-restrictive-covenant-related breach of contract claims, whether the harm plaintiff would suffer if an injunction does not issue would outweigh the harm defendants would suffer if an injunction does issue, or whether the issuance of an injunction would serve the public interest.

preliminary injunctive relief was decided, the case should be sent to arbitration pursuant to the arbitration clause in the Franchise Agreement,[39] and that these proceedings should be stayed pending arbitration.

Though there is case law in other circuits supporting the proposition that under

---

[39]The arbitration clause states:

Except with respect to an injunctive or other equitable relief requested by Franchisor under Section 19.2, and injunctive or equitable relief sought by Franchisor to enforce any of the provisions of Section 11 relating to Covenants, upon demand of any party, whether made before or after institution of any judicial proceeding, any dispute, claim or controversy arising out of, connected with or relating to this Agreement ("Disputes"), between or among parties to this Agreement shall be resolved by binding arbitration as provided herein. Institution of a judicial proceeding by a party does not waive the right of that party to demand arbitration hereunder. Disputes may include, without limitation, tort claims, counterclaims, disputes as to whether a matter is subject to arbitration, claims brought as class actions, claims arising from documents executed in the future, or claims concerning any aspect of the past, present or future relationships arising out of or connected with the transactions reflected by this Agreement. Arbitration shall be conducted under and governed by the Commercial Arbitration Rules (the "Arbitration Rules") of the American Arbitration Association and Title 9 of the U.S. Code. All arbitration hearings shall be conducted in Gwinnett County, Georgia. The expedited procedures set forth in Rule 51, et seq. of the Arbitration Rules shall be applicable to claims of less than $250,000. All applicable statutes of limitation shall apply to any Dispute. A judgment upon the award may be entered in any court having jurisdiction. The panel from which all arbitrators are selected shall be comprised of licensed attorneys. The single arbitrator selected for expedited procedure shall be a retired judge from the highest court of general jurisdiction, state or federal, of the state where the hearing will be conduct, or if such person is not able to serve, the single arbitrator may be a licensed attorney.

Franchise Agreement, at § 19.4.

20

9 U.S.C. § 3,[40] courts have the discretionary authority to dismiss cases when compelling arbitration, the Eleventh Circuit adheres to a more literal interpretation of the statute. *See Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992). *See also Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F.3d 1255, 1261 (11th Cir. 2003); *Pitchford v. Amsouth Bank*, 285 F. Supp. 2d 1286, 1297 (M.D. Ala. 2003); *Wright v. Circuit City Stores, Inc.*, 82 F. Supp. 2d 1279, 1288 (N.D. Ala. 2000); *Bradford v. KFC National Management Company*, 5 F. Supp. 2d 1311, 1315 (M.D. Ala. 1998); *Nazon v. Shearson Lehman Brothers, Inc.*, 832 F. Supp. 1540, 1543 (S.D. Fla. 1993). *Accord Lloyd v. Hovensa, LLC*, 369 F.3d 263, 268-271 (3rd Cir. 2003).

In *Bender*, for example, the Eleventh Circuit concluded that district courts do not have the power to choose dismissal over a stay:

> The district court properly found that the state law claims were subject to arbitration, but erred in dismissing the claims rather than staying

---

[40] Section 3 reads as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been held in accordance with the terms of the agreement*, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis supplied).

> them.  Upon finding that a claim is subject to an arbitration agreement,
> the court should order that the action be stayed pending arbitration.  9
> U.S.C. § 3.  If the parties do not proceed to arbitration, the court may
> compel arbitration.  9 U.S.C. § 4.  Therefore, we vacate the dismissal of
> the state law claims and remand with instructions that judgment be
> entered staying all claims pending arbitration.

*Bender*, 971 F.2d at 699.  In *Lloyd*, the Third Circuit expressed a similar stance on the

issue, basing its reasoning primarily on the clear statutory language, but also

providing some practical justifications for entering a stay rather than an order of

dismissal.  *Lloyd*, 369 F.3d at 268-271.  The court noted that a stay "relieves the party

entitled to arbitrate of the burden of continuing to litigate the issue while the

arbitration process is on-going, and it entitles that party to proceed immediately to

arbitration without the delay that would be occasioned by an appeal of the District

Court's order to arbitrate."[41]  *Id.* at 269.

For these reasons, defendants' motion to stay the litigation pending arbitration

will be granted, and the parties will be ordered to proceed to arbitration pursuant to

the arbitration clause in the Franchise Agreement.

### III. CONCLUSION AND ORDERS

In accordance with the foregoing, plaintiff's motion for preliminary injunctive

---

[41] The Eleventh Circuit also recognizes the fact that stays, unlike dismissals, are unappealable, interlocutory decisions.  The court in *Bender* observed, "[i]f the district court had stayed the state law claims and compelled arbitration under 9 U.S.C. §§ 3-4, this order would not have been appealable under 9 U.S.C. §§ 16(b)(1) and (2)."  *Bender*, 971 F.2d at 699.  *See also Campbell v. Dominick & Dominick, Inc.*, 872 F.2d 358, 360 (11th Cir. 1989).

relief is DENIED.  Defendants' motion to stay this litigation pending arbitration is GRANTED.  The parties are ORDERED to proceed to arbitration in accordance with the terms of the arbitration clause contained in the parties' Franchise Agreement. This action is STAYED pending resolution through arbitration.  Even so, for administrative and statistical purposes, the Clerk of Court is directed to close this file. *See*, *e.g.*, *Taylor v. Citibank USA*, *NA*, 292 F. Supp. 2d 1333, 1346 (M.D. Ala. 2003) (closing file administratively after entering stay but advising parties of their right to request reinstatement); *Pitchford*, 285 F. Supp. 2d at 1297 (same); *Nazon*, 832 F. Supp. at 1543 (same); *Brown v. Terminix International Company*, *LP*, No. CV-05-607-PB, 2006 WL 181678, at * 5 (S.D. Ala. Jan. 24, 2006) (same).  This action will have no effect on the court's retention of jurisdiction, and the file may be re-opened, on either party's written motion, for an appropriate purpose such as dismissal following settlement, entry of judgment, vacatur, or modification of an arbitrator's award.  *See* 9 U.S.C. § 9; *Cortez Byrd Chips*, *Inc. v. Bill Harbert Construction Company*, 529 U.S. 193, 201-02 (2000).  The parties are directed to file a notice with the court upon settlement of the case or the conclusion of arbitration.

DONE this 23rd day of July, 2009.

UNITED STATES DISTRICT JUDGE
SITTING BY DESIGNATION

23